STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-AP-15-034

THE PROVIDENCE MUTUAL FIRE )
INSURANCE COMPANY, )
)
Petitioner, )
)
v. )
)
STATE OF MAINE DEPARTMENT )
OF PROFESSIONAL AND FINANCIAL )
REGULATION, BUREAU OF )
INSURANCE, )
)
Respondent, )
)
and )
)
HARRY and KAREN KRIGMAN )
)
Parties of Interest. )

**STATE OF MAINE**
Cumberland, ss, Clerk's Office

MAR 22 2016

**RECEIVED**

## ORDER ON PETITION FOR REVIEW OF FINAL AGENCY ACTION

The Providence Mutual Fire Insurance Company ("Providence Mutual") has brought this petition for review of final agency action by the Bureau of Insurance (the "Bureau") pursuant to the Maine Administrative Procedures Act (the "APA"), 5 M.R.S. § 11001 *et seq.*, and Maine Rule of Civil Procedure 80C. Oral argument was held March 21, 2016.

Based on the following, Providence Mutual's petition for review of final agency action is denied. The Bureau of Insurance's decision and order is affirmed.

*I. Background*

A. Undisputed Facts

In the decision and order, the superintendent of insurance made the following findings of fact. Providence Mutual has insured five properties located in Portland, Maine owned by Harry and Karen Krigman (the "Krigmans") under a businessowners policy since December

1

2008. (R. 1 ¶ 1.) This appeal concerns two of the five properties: the 563 Cumberland Ave. property and the Walton St. property. Providence Mutual inspected the 563 Cumberland Ave. property and the Walton St. property in December 2008. (R. 1 ¶¶ 2-3.)

On August 31, 2014, a claim was submitted to Providence Mutual for injuries sustained by claimant who fell off the front steps of the Walton Street property due to inadequate railings. (R. 1 ¶ 4.) On October 16, 2014, Providence Mutual's underwriting management approved a renewal of the policy, effective December 5, 2014. (R. 1 ¶ 5.) The policy term was from December 5, 2014, to December 5, 2015. (R. 1 ¶ 1.) The underwriter also ordered inspections of the 563 Cumberland Ave. and Walton St. properties, which occurred on January 26, 2015. (R. 2 ¶ 6.)

On March 11, 2015, Providence Mutual mailed the Krigmans a document titled Notice of Cancellation, effective April 14, 2015, advising them that the 563 Cumberland Ave. and Walton St. properties were being removed from the policy. (R. 2 ¶ 7.) Providence Mutual's stated reason was that the two properties did not meet the company's current underwriting guidelines due to an increase in hazard resulting from inadequate maintenance and upkeep. (*Id.*) Providence Mutual stated that it would continue coverage for the other three locations under the policy. (*Id.*)

B.     The Administrative Proceeding

On April 27, 2015, the Krigmans requested an administrative hearing before the Bureau of Insurance. (R. 2 ¶ 8.) A hearing was held on June 23, 2015, before a designated hearing officer pursuant to 24-A M.R.S. §§ 2908(6), 3007(6). (R. 1.) At the hearing, the Bureau determined that Providence Mutual had the burden of establishing the existence of proof or evidence supporting its reason for terminating the Krigmans' policy. (R. 1, 3.) The parties agreed that Providence Mutual had relied on title 24-A M.R.S., section 3007(2)(C), which

permits cancellation of a commercial policy for substantial changes in the risk which increase the risk of loss after the insurance coverage has been issued or renewed, as its basis for cancelling coverage. (R. 3.) Providence Mutual's assistant vice president of underwriting testified on behalf of the company. (R. 1.) Mr. Krigman and a contractor testified on behalf of the Krigmans. (*Id.*) Mr. Krigman and the contractor both testified that the deteriorating conditions of the two properties had existed for some time and did not manifest after the policy was renewed on December 5, 2014. (R. 3.) On July 13, 2015, the hearing officer, on behalf of the superintendent of insurance, issued a decision and order concluding that Providence Mutual failed to establish adequate grounds for termination and invalidated Providence Mutual's cancellation of the Krigmans' policy. (R. 3-4.)

## C.   Procedural History and Issues on Appeal

On August 12, 2015, Providence Mutual filed a petition for review of the superintendent's decision and order pursuant to 24-A M.R.S. § 236, 5 M.R.S. § 11002(1) of the APA, and Maine Rule of Civil Procedure 80C. Providence Mutual filed its brief on November 2, 2015. The Bureau of Insurance filed its brief on December 7, 2015. Mr. Krigman also filed a brief on December 7, 2015. Providence Mutual filed a reply brief on December 18, 2015.

Providence Mutual does not contest the superintendent's findings of fact. (Br. of Pet. 1.) Providence Mutual only contends that the superintendent's decision and order is based on errors of law. (*Id.* at 6.) Providence Mutual raises five arguments on appeal: (1) the superintendent erred in its interpretation of section 3007; (2) that section 3007 did not apply to actions taken by Providence Mutual regarding the Krigmans' policy; (3) that, under Maine law, a renewal of an insurance policy should not constitute a waiver or estoppel with respect to grounds for cancellation that existed before renewal; (4) the legislative history of section 3007 indicates that its primary purpose was to avoid short-term cancellations, which is an issue not

3

present in this case; (5) the Bureau's interpretation of section 3007(2)(C) is overly burdensome on insurers and may impact rates and insurance availability within Maine.[1] (*Id.* at 7-14.)

## II. *Analysis*

### A. Standard of Review

When this court acts in its appellate capacity pursuant to Maine Rule of Civil Procedure 80C and the APA, the court directly reviews the agency's decision for abuse of discretion, error of law, or findings not supported by the evidence. *Guar. Tr. Life Ins. Co. v. Superintendent of Ins.*, 2013 ME 102, ¶ 16, 82 A.3d 121; *See* 5 M.R.S. § 11007(C). Generally, in a review of final agency action, the parties must raise any objections they have before the agency in order to preserve those issues for appeal. *Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 24, 39 A.3d 74. However, challenges to an administrative agency's jurisdiction or its authority act under to its statute may be brought at any time. *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 12, 868 A.2d 172.

Statutory construction is a question of law that the court reviews *de novo*. *Champlain Wind, LLC v. Bd. of Envtl. Prot.*, 2015 ME 156, ¶ 15, __ A.3d __. The court first looks to the plain language of the statute in order to effectuate the Legislature's intent. *Guar. Tr. Life Ins. Co.*, 2013 ME 102, ¶ 17, 82 A.3d 121. In the absence of legislative definitions, the court affords statutory terms their plain, common, and ordinary meaning. *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621. The court rejects statutory interpretations that render some

---

[1] Providence Mutual's brief actually addresses both 24-A M.R.S. § 2908 and 24-A M.R.S. § 3007. (Br. of Pet. 7-14.) However, this court's analysis is confined to section 3007. At the administrative hearing, the parties agreed that Providence Mutual had relied on only section 3007 as its grounds for cancelling the Krigmans' coverage and that only section 3007 was at issue in this case. (Tr. 5:17-6:24.) Therefore, the court's decision on this appeal addresses only section 3007. Furthermore, the operative language of section 2908 and section 3007 are identical. 24-A M.R.S. §§ 2908, 3007. Both provisions limit an insurer's ability cancel a policy mid-term in the same manner. *Id.* The only difference between the provisions is that § 2908 applies to casualty insurance, whereas section 3007 applies to property insurance. *Id.* Providence Mutual's arguments regarding the Bureau's interpretation of both provisions are also identical. (Br. of Pet. 7-14.) Thus, the court's decision regarding section 3007 would be equally applicable to § 2908 in any event.

language mere surplusage. *Id.* The court examines other indicia of legislative intent only when the plain language of the statute is ambiguous. *Berube v. Rust Eng'g,* 668 A.2d 875, 877 (Me. 1995); *see also York Ins. of Me., Inc. v. Superintendent of Ins.,* 2004 ME 45, ¶ 14, 845 A.2d 1155.

The court will defer to an agency's construction of the statutes it administers "unless the statute plainly compels a contrary result." *Champlain Wind, LLC,* 2015 ME 156, ¶ 15, __ A.3d __. The court reviews an agency's interpretation of the statute it administers only to determine whether the agency's conclusions are unreasonable, unjust, or unlawful. *Id.*

B.      Whether the Superintendent Erred in its Interpretation of 24-A M.R.S. section 3007.

First, Providence Mutual argues that superintendent erred in its interpretation of section 3007. (Br. of Pet. 7-8.) Section 3007(2)(C) provides:

> [N]o contract of property insurance may be cancelled by an insurer prior to the expiration of the policy, except for one or more of the following grounds:
> ...
> C. Substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including, but not limited to, an increase in exposure due to regulation, legislation or court decision; ...

24-A M.R.S. section 3007(2)(C). Under the statute, "to renew" means "the issuance of, or the offer to issue by an insurer or an affiliate of an insurer, a policy succeeding a policy previously issued ... or the issuance of a certificate or notice extending the terms of an existing policy for a specified period beyond its expiration date." *Id.* section 3007(1)(E).

In the decision and order, the superintendent explained that the language of section 3007(2)(C) provides statutory grounds upon which an insurer may cancel a policy for issues that arise during the policy term. (R. 3-4.) The superintendent held that the language "after insurance coverage has been *issued*" permits an insurer to cancel a policy mid-term for substantial changes that occur during the policy's first year. (*Id.* at 4) (emphasis in original). The superintendent held that the language "*or renewed*" permits an insurer to cancel a policy mid-term for substantial changes that occur during subsequent terms. (*Id.*) (emphasis in

original). Thus, under the superintendent's interpretation of section 3007(2)(C), an insurer may only cancel a policy mid-term for substantial changes if the changes occurred since the most recent renewal. The superintendent's decision and order states, "If the intent had been to allow an insurer to cancel at any point in time after the initial issuance of the policy, the words 'or renewed' would be meaningless." (R. 3.) Therefore, because Providence Mutual had not established adequate grounds for cancellation, i.e., that the substantial changes occurred after the most recent renewal on December 5, 2014, the superintendent invalidated Providence Mutual's cancellation of the Krigmans' policy. (R. 3-4.)

On appeal, Providence Mutual argues that the superintendent improperly read a "most recent" renewal requirement into the statute. (Br. of Pet. 8-9.) Providence Mutual argues that the neither the statute nor the statutory definition of a "renewal" indicate which renewal must be considered. (*Id.* at 9.) Thus, according to Providence Mutual, the court must allow an insurer to cancel a policy if it can demonstrate that a substantial change in circumstances resulting in an increase in the risk of loss has occurred at any time after the date the policy was issued or first renewed. (*Id.*) Providence Mutual also argues that its interpretation of section 3007 is reasonable because in situations like this case, involving gradually deteriorating structures, an insurer will be unable to prove the existence substantial changes that result in an increase in the risk of loss since the latest one-year renewal in order to cancel a policy mid-term. (*Id.* at 9-10.)

The court finds no error of law with the superintendent's interpretation of section 3007(2)(C). The plain language of the statute states that an insurer may cancel a policy mid-term for a "substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed,..." 24 M.R.S. section 3007(2)(C). The court agrees that if an insurer could cancel a policy at any time for substantial changes that occurred any time

6

after the policy issued or during any previous term, then the words "or renewed" would be redundant and meaningless. As previously stated, the court must reject interpretations of statutes that render some language mere surplusage. *Dickau*, 2014 ME 158, ¶ 22, 107 A.3d 621.

Furthermore, the court does not find that the superintendent's interpretation of the statute administered by the Bureau to be "unreasonable, unjust, or unlawful," nor does the court find that the statute plainly compels a contrary result. *Champlain Wind, LLC*, 2015 ME 156, ¶ 15, __ A.3d __. Contrary to Providence Mutual's argument, an insurer is not without recourse to cancel a policy mid-term in situations involving gradually deteriorating buildings. Under section 3007, an insurer may also cancel a policy mid-term for "failure to comply with reasonable loss control recommendations" or "substantial breach of contractual duties, conditions or warranties." 24-A M.R.S. section 3007(2)(D)-(E). Therefore, the court finds no error of law with the superintendent's interpretation of section 3007.

C.    Whether section 3007 Applies to Providence Mutual's Action Regarding the Krigmans' Policy.

Section 3007(2)(C) only applies to mid-term "cancellations" of insurance policies. 24-A M.R.S. section 3007(2)(C). The statute defines a "cancellation" as the "termination of a policy at a date other than its expiration date." *Id.* section 3007(1)(A). An insured who receives a notice of an insurer's intent to cancel a policy may, within 45 days of the receipt of the notice, request a hearing before the superintendent for the purpose of establishing the existence of the proof or evidence supporting the insurer's cancellation. *Id.* section 3007(6).

Providence Mutual points out that the superintendent's decision and order noted that Providence Mutual "is not attempting to cancel the policy; it is removing two of the five locations from coverage and continuing the policy on the other three locations." (Br. of Pet. 10; R. 4.) Providence Mutual argues that, because the superintendent found that Providence

7

Mutual was not "cancelling" the Krigmans' policy, section 3007 did not apply to its actions, the Krigmans should not have been granted a hearing, and the superintendent's decision and order should be vacated. (Br. of Pet. 10-11.) In response, the Bureau argues that Providence Mutual did not raise this argument at the administrative hearing and has not properly preserved this argument for appeal. (Br. of Resp. 20-21.)

Providence Mutual essentially argues that the Bureau was without jurisdiction under section 3007 to decide this case because Providence Mutual's actions were not a cancellation. Challenges to an administrative agency's jurisdiction may be brought at any time. *Sold, Inc.*, 2005 ME 24, ¶ 12, 868 A.2d 172. Therefore, Providence Mutual may raise this argument for the first time on appeal.

Contrary to Providence Mutual's argument, the superintendent did conclude that Providence Mutual's actions constituted an attempt to cancel. Although, the superintendent's decision and order does note that Providence Mutual was attempting remove only two properties from coverage rather than cancel the whole policy, the superintendent's decision and order concluded that neither Maine law nor the policy permitted Providence Mutual to "unilaterally cherry pick" which properties it was willing to insure in the middle of the policy term. (R. 4.) Thus, the superintendent concluded that Providence Mutual actions constituted a cancellation under section 3007. (R. 3-4.)

The superintendent properly concluded that Providence Mutual's actions were a cancellation under section 3007, and the Bureau had jurisdiction to decide this case. First, Providence Mutual sent the Krigmans a notice entitled "Notice of Cancellation of Insurance," which unambiguously stated, "We are cancelling this policy. Your insurance will cease on the Date of Cancellation shown above." (R. 66.) Second, at administrative hearing, Providence Mutual agreed that had relied on section 3007 as its "grounds for cancellation" of the

Krigmans' coverage. (Tr. 5:17-6:24.) Thus, Providence Mutual conceded that it had cancelled the Krigmans' coverage. Third, at administrative hearing, Providence Mutual's assistant vice president of underwriting also conceded there was no provision in the insurance policy that permitted Providence Mutual to remove coverage for certain properties during the policy term. (Tr. 67:16-68:11.) Therefore, the superintendent properly concluded that Providence Mutual's action regarding the Krigmans' policy was a cancellation and properly applied section 3007 to Providence Mutual's actions. Thus, the Bureau had jurisdiction over this action.

### D.    Providence Mutual Remaining Arguments

Regarding Providence Mutual final three arguments, Providence Mutual argues that the Bureau's interpretation of section 3007(2)(C) results in a situation where the renewal of an insurance policy has "an estoppel effect on grounds for policy cancellations that existed before the policy was renewed." (Br. of Pet. 11.) Providence Mutual argues that such an interpretation is an error of law because it conflicts with other Maine laws applicable to consumer insurance policies. (*Id.*) Specifically, Providence Mutual cites two consumer protection statutes that regulate the cancellation of consumer property and automobile insurance policies. (*Id.*) Both consumer protection statutes state, "Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before renewal." 24-A M.R.S. §§ 2919, 3053. Providence Mutual concedes that these consumer protection statutes do not apply to the Krigmans' policy, which is a commercial policy. (Br. of Pet. 12.) However, Providence Mutual argues, "conceptual congruence demands that a commercial policy does not enjoy estoppel-based protections that are not available to a more vulnerable class of consumers." (*Id.*)

Providence Mutual also argues, based on the legislative history, the Legislature did not intend for section 3007 to prevent an insurer from cancelling a policy when it has a reasonable

9

basis for cancellation. (*Id.* at 13.) According Providence Mutual, the legislative history demonstrates that the Legislature intended section 3007 to prevent an insurer from cancelling a policy in a manner that did not allow the insured time to obtain alternative coverage. (*Id.*) Providence Mutual asserts that it provided the Krigmans with thirty days notice prior to the cancellation of coverage. (*Id.*) Thus, according Providence Mutual, its actions with regard to the Krigmans' policy do not implicate the Legislature's concerns about short-notice cancellations. (*Id.*) Therefore, Providence Mutual argues, the superintendent's decision and order should be reversed. (*Id.* at 14.)

Lastly, Petitioner argues that, under the Bureau's interpretation of section 3007(2)(C), the only manner in which an insurer may terminate a policy for gradually deteriorating buildings would be to non-renew the policy. (*Id.*) According Providence Mutual, this would result in an increase in regular inspections of insured properties, which would be prohibitively expensive, resulting in increased insurance costs for the insured and insurers leaving the market. (*Id.* at 14-15.) As noted above and also at oral argument, an insurer can readily accomplish what Providence Mutual was attempting to do—eliminate a substantial risk—by notifying the insured that the condition at issue must be corrected or eliminated by a defined date or the policy will be cancelled. *See* 24-A M.R.S. § 3007(2)(D)-(E).

As previously discussed, on questions of statutory interpretation, the court looks to the plain language of the statute. *Guar. Tr. Life Ins. Co.*, 2013 ME 102, ¶ 17, 82 A.3d 121. If the plain meaning of the statute is clear, the court investigates no further. *York Ins. of Me., Inc.*, 2004 ME 45, ¶ 14, 845 A.2d 1155. Furthermore, "[w]hether the enactment of the law is wise or not, and whether it is the best means to achieve the desired result are matters for the legislature and not for the Court." *Biddeford v. Biddeford Teachers Ass'n*, 304 A.2d 387, 393 (Me. 1973) (internal citation and quotation marks omitted).

10

The court has already determined that section 3007 is unambiguous and that the Bureau's interpretation of section 3007(2)(C) is reasonable, just, and lawful. Therefore, the court need not look to other statutes not at issue in this case nor the legislative history. The court also need not consider Providence Mutual's policy arguments, which are best left to the Legislature.

### III. *Conclusion*

Based on the foregoing, the court concludes that section 3007 is unambiguous and that the Bureau of Insurance's interpretation of section 3007(2)(C) is reasonable. Therefore, the court sees no error with Bureau of Insurance's interpretation of section 3007(2)(C). The court also determines that the Superintendent of Insurance correctly concluded that the Providence Mutual Fire Insurance Company's actions constituted a cancellation under section 3007 and that Bureau of Insurance had jurisdiction to adjudicate the Krigmans' appeal of the cancellation under section 3007.

It is hereby ORDERED AND ADJUDGED AS FOLLOWS: The Providence Mutual Fire Insurance Company's petition for review of final agency action is denied. The Bureau of Insurance's decision and order is affirmed. Judgment is entered in favor of the Respondent State Of Maine Department of Professional And Financial Regulation, Bureau Of Insurance

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated March 22, 2016

A.M. Horton
Justice, Superior Court

11